IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELI DURAN,

      Plaintiff,

v.                                                    CIV No. 13-578 GBW

SOCIAL SECURITY ADMINISTRATION,
Carolyn W. Colvin, Acting Commissioner of the SSA,

      Defendant.


**ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND**

      This matter comes before the Court on Plaintiff's Motion and supporting Memorandum to Reverse or Remand the Social Security Agency (SSA) Commissioner's decision to deny disability insurance benefits. *Docs. 17, 18.* Having considered the briefing (*docs. 19, 20, 21*), the applicable law, and being otherwise fully advised, the Court GRANTS Plaintiff's motion and REMANDS this action to the Commissioner for further proceedings consistent with this opinion.

I.     BACKGROUND

     A.  **Plaintiff's Medical History**

      Plaintiff is a 54-year-old man who suffers from degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, and pain related to both conditions. AR at 24; *doc. 18* at 1. Plaintiff alleged a disability onset date of January 1, 2009. *Doc. 18* at 1. More than a year after the alleged onset date, on February 17, 2010,

1

Plaintiff visited William Gaspar, M.D. and reported having neck and shoulder pain that had worsened over the preceding two weeks.  AR at 275.  On July 28, 2011, upon Dr. Gaspar's request, James Burke, M.D. x-rayed Plaintiff's shoulder and reported that "[n]o significant abnormality [was] demonstrated."  AR at 311.

Seven months later, Dr. Gaspar referred Plaintiff to Richard Radecki, M.D.  AR at 370.  On February 23, 2011, Plaintiff reported to Dr. Radecki that "[a]t its worse, the pain is rated a 10 on a scale of 10 and at its least, a [sic] 8."  AR at 370.  Dr. Radecki noted that Plaintiff's "current problems" were lumbar radiculopathy, a "[d]isorder of the spinal nerve roots and nerves," (Stedman's Medical Dictionary 1484 (26th ed. 1990)), and a rotator cuff injury on his right shoulder.  AR at 370.  Dr. Radecki prescribed Tramadol, a pain medication.  AR at 374.  Steroidal injections were to be scheduled in the ensuing weeks, but the record does not indicate that these ever took place.  AR at 374.

On March 9, 2011, upon Dr. Radecki's referral, Wesley Pruett, M.D. conducted an MRI examination of Plaintiff's spine. AR at 379-90.  Dr. Pruett's impression was that Plaintiff suffered from multilevel spondylosis, AR at 390, which is defined as "[a]nkylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature."  Stedman's Medical Dictionary 1656 (26th ed. 1990).  Ankylosis, in turn, is the "[s]tiffening or fixation of a joint as a result of a disease process, with fibrous or bony union across the joint."  Stedman's Medical Dictionary 93 (26th ed. 1990).

On March 10, 2011, Plaintiff again visited Dr. Radecki, who had reviewed the March 9, 2011, MRI.  AR at 375.  Dr. Radecki noted that Plaintiff's pain had "decreased to 5/10 most of the time with tramadol for pain."  AR at 375.  Regarding Plaintiff's MRIs, Dr. Radecki noted "normal right shoulder mri for age.  mild deg changes in the lumber mri without nerve impingement, central/foraminal stenosis."  AR at 377.  Dr. Radecki made "[n]o recommendations on procedures are [sic] this time," and recommended that Plaintiff "[c]ontinue with conservative treatment to include home exercise program, moist heat, and stretches."  AR at 377.

On March 16, 2011, Plaintiff visited Dr. Gaspar.  AR at 306.  In Dr. Gaspar's findings and comments, he noted the following: chronic neck pain, recurrent headaches, degenerative lumber disk disease, multilevel spondylosis, high red blood cell count, myalgia form injuries, fatigue, PTSD, and depression, among other things.  AR at 306.

On March 21, 2011, Martin Trujillo, M.D., a state agency medical consultant, examined Plaintiff.  AR at 290.  Dr. Trujillo reviewed both the MRI of Plaintiff's shoulder and lumbar spines.  AR at 290.  He also conducted a physical examination of Plaintiff.  AR at 290.  Dr. Trujillo's impressions were "1.  Degenerative joint disease and degenerative disc disease of the extremities and the spine.  There is minimal evidence of L4 radiculopathy.  2. Degenerative joint disease and various soft tissue abnormalities including right rotator cuff tendinitis.  There is no nerve impingement."  AR at 291.  Dr. Trujillo further stated that "[t]here seems to be the moderate to significant joint

3

degenerative disease appropriate for age and work history.  He does perform his activities of daily living." AR at 292.  Dr. Trujillo reported Plaintiff's current medications as "[d]iazepam for sleep, hydrocodone for pain." AR at 292.

Plaintiff continued to see Dr. Gaspar throughout March 2011 and into April 2011. AR at 26.  On April 4, 2011, upon Dr. Gaspar's request, Robert Seigel, M.D. conducted an x-ray examination of Plaintiff's spine. AR at 312.  Dr. Siegle's impressions were "1. Probable congenital fusion anomaly of c4-5.  2.  Mild degenerative changes in the cervical spine, particularly at C6-7.  3.  Otherwise unremarkable cervical spine series." AR at 312.

On May 4, 2011, upon Dr. Gaspar's referral, Theresa Genovese-Elliott, M.D. evaluated Plaintiff. AR at 342.  Dr. Genovese-Elliott also reviewed the MRIs of Plaintiff's shoulder and spine and the x-rays of his shoulder and spine. AR at 342-43. Dr. Genovese-Elliott's impressions were 1) "Cervical spondylosis with C4-5 congenitally fused vertebra;" 2) "Lumbar spondylosis" and "[e]arly minimal facet arthropathy;" and 3) "Right shoulder impingement with moderate acromioclavicular joint disease, non-acute SLAP tear." AR at 343.  Dr. Genovese-Elliott noted that Plaintiff "takes hydrocodone, although reluctantly . . . .  He has not recently been to physical therapy and he is somewhat reluctant to undergo injections." AR at 342.  The results of a routine drug screen taken that day, however, "did not show evidence of prescribed or non-prescribed medications." AR at 345.  Dr. Genovese-Elliott instructed Plaintiff to

4

follow up in a month and noted that if Plaintiff's condition didn't improve, "then we will discuss further treatment recommendations, including but not limited to, lumbar facet injections or an epidural, right AC joint steroid and subacromial joint injections." AR at 344.  Plaintiff was instructed to continue taking his medications and was given a prescription for Soma, a pain medication.  AR at 344.

On July 6, 2011, Plaintiff had a follow-up appointment with Dr. Genovese-Elliott. AR at 345.  On that occasion, Plaintiff complained of back pain and of "episodic neck pain."  AR at 345.   He also stated that "[h]e would like to discuss his treatment plan with Dr. Gaspar, but given his lumbar pain, he would like to proceed with an epidural in the interim."  AR at 345.  Dr. Genovese-Elliott noted that Dr. Gaspar was prescribing hydrocodone and ibuprofen.  AR at 345.

Mark Werner, M.D., a state agency medical consultant, compiled a Physical Residual Functional Capacity Assessment ("PRFC") of Plaintiff on July 15, 2011.[1]  AR at 349-56.  Dr. Werner reviewed Plaintiff's medical records, including notes from Plaintiff's visits with Dr. Gaspar, Dr. Trujillo's examination of Plaintiff, the x-ray of Plaintiff's shoulder, the MRI of his spine, and the MRI of his shoulder.  AR at 351.  Dr. Werner concluded that in an eight-hour day, Plaintiff was capable of standing and/or walking at least two hours and capable of sitting for six hours.  AR at 350.

---

[1] An earlier PRFC was compiled by N.D. Nickerson, M.D., a state agency medical consultant, on March 23, 2011, but was afforded limited weight by the ALJ and is not discussed by the parties on appeal.

On August 25, 2011, Dr. Genovese-Elliott performed a selective nerve root block as treatment for Plaintiff's lower back pain.  AR at 357.

After August 25, 2011, as the ALJ points out, the record reflects that Plaintiff did not return for treatment by a specialist, such as Dr. Genovese-Elliott or Dr. Radecki, he did not comply with a recommendation for physical therapy, he did not continue the nerve root block or steroid injections, and he received only "routine conservative treatment for his condition."  AR at 26.  The last treatment date in the record is October 18, 2012.  AR at 384.  On that occasion, Plaintiff visited Dr. Gaspar and complained of trouble sleeping and neck pain.  AR at 384.  Dr. Gaspar prescribed ibuprofen, Soma, and Ambien.  AR at 385.

Dr. Gaspar filled out medical statement forms and questionnaires regarding Plaintiff's impairments and limitations on April 7, 2011, May 24, 2011, September 14, 2011, and September 21, 2011.  Throughout these forms, Dr. Gaspar reiterates that, in an eight-hour work day, Plaintiff could not sit from more than two hours or stand or walk for two hours.  AR at 303, 338-41, 359-62, 366-69.

### B.  Procedural History

Plaintiff Eli Duran claims that he has been disabled since January 1, 2009.  *Doc 18* at 1.  Specifically, Plaintiff contends that he suffered from degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, and chronic pain related to both conditions.  *Id*. at 1.  He applied for Title II disability benefits on

February 11, 2011.  *Id.*  Plaintiff's claim was first denied on March 29, 2011, and again on

July 19, 2011, after his request for reconsideration.  Administrative Record ("AR") at 20.

He then sought and was granted a hearing, which took place via videoconference on

December 12, 2012, in front of Administrative Law Judge ("ALJ") Jennie L. McLean.  *Id.*

The ALJ issued a decision on January 24, 2013, finding that Plaintiff had not established

disability on or before the expiration date of Plaintiff's insured status, December 31,

2011, and was therefore not entitled to disability insurance benefits.  AR at 17.  On April

26, 2013, the Social Security Administration's Appeals Council affirmed the ALJ's

decision.  AR at 1.  Plaintiff now seeks review of the ALJ's decision pursuant to 42

U.S.C. § 405(g).  *Doc. 17* at 1.

## II.   APPLICABLE LAW

### A.  Disability Determination Process

For purposes of Social Security disability insurance benefits, an individual is

disabled when he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person

satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.

If the Commissioner is able to determine whether an individual is disabled at one step,

he does not go on to the next step.  *Id.* § 404.1520(a)(4).  The steps are as follows:

(1)   Claimant must establish that he is not currently engaged in "substantial gainful activity."  If claimant is so engaged, he is not disabled.

(2)   Claimant must establish that he has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that have lasted for at least one year.  If claimant is not so impaired, he is not disabled.

(3)   Claimant must establish whether his impairment(s) are equivalent to a listed impairment that has already been determined to be so severe as to preclude substantial gainful activity.  If the claimant's impairment or combination of impairments meets or equals a listed impairment, claimant is presumed disabled.

(4)   If the claimant's impairment(s) are not listed, claimant must establish that the impairment(s) prevent him from doing his "past relevant work."  If claimant is capable of returning to his past relevant work, he is not disabled.

(5)   If claimant establishes that the impairment(s) prevent him from doing his past relevant work, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work."  If the Commissioner is unable to make that showing, claimant is deemed disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

The fourth step of the above analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity in light of "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  A claimant's residual functioning capacity ("RFC") is "the most [he] can still do despite [his physical and mental] limitations."  *Id.* § 404.1545(a)(1).  Second, the ALJ determines the physical and mental demands of claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting *Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work*, SSR 82-62, 1982 WL 31386 (Jan. 1, 1982)).  Third, the

8

ALJ determines whether, in light of his RFC, the claimant is capable of meeting those

demands.  *Id*. at 1023, 1025.

In finding Plaintiff not disabled, the ALJ followed the five-step analysis set out

above.  At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity during the period for which he was seeking disability benefits.  AR at

22.  At step two, the ALJ determined that claimant suffered from severe impairments,

namely degenerative disc disease of the lumbar spine and degenerative joint disease of

the right shoulder.  AR at 22.  At step three, however, the ALJ found that these

impairments were neither listed impairments nor were they equivalent to a listed

impairment such that they would qualify Plaintiff for disability benefits.  AR at 22.  At

step four, the ALJ found that Plaintiff "had the residual functional capacity to perform

sedentary work," (AR at 23), but determined that Plaintiff was unable to perform past

relevant work (AR at 31).

At the fifth and final step, the ALJ stated, "Considering the claimant's age,

education, work experience, and residual functional capacity, the claimant had acquired

works skills from past relevant work that were transferable to other occupations with

jobs existing in significant numbers in the national economy."  AR at 31.  The ALJ

concluded, therefore, that "although the claimant's additional limitations did not allow

the claimant to perform the full range of sedentary work . . . a finding of 'not disabled'

is appropriate."  AR at 32.  Accordingly, Plaintiff's application for benefits was denied.

B. **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the
Commissioner only to determine whether it 1) is supported by "substantial evidence,"
and 2) comports with the proper legal standards. *Casias v. Sec'y of Health & Human
Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  Substantial evidence is "more than a mere
scintilla.  It means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Id.* at 800.

"In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute
our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir.
2008).  "The record must demonstrate that the ALJ considered all of the evidence, but an
ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007,
1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his
decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely
upon, as well as significantly probative evidence he rejects." *Id.* at 1010.  "The
possibility of drawing two inconsistent conclusions from the evidence does not prevent
[the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d
1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir.
2004)).

### III.   ANALYSIS

Plaintiff argues that the ALJ erred by concluding that Plaintiff was capable of performing sedentary work sufficiently available in the national economy.  At the center of Plaintiff's argument is his assertion that the ALJ incorrectly determined his residual functional capacity at step four of the analysis.  Specifically, Plaintiff argues that the ALJ erred 1) by refusing to give controlling weight to the medical opinions of Mr. Duran's treating physician, Dr. Gaspar; 2) by giving controlling weight to a non-treating, state agency physician, Dr. Werner; 3) by considering Plaintiff's last job, which did not qualify as substantial gainful activity; and 4) by failing to adequately support her step five conclusion that Plaintiff could perform other available work.  *Doc. 18* at 2-3.  The Court, having carefully reviewed the record and applicable law, finds that the ALJ erred in failing to perform the required analysis for assigning weight to Plaintiff's treating source's medical opinions.

### A.   <u>The ALJ's decision does not comport with the applicable legal standards for assessing treating source opinions.</u>

A "treating source" is defined as a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 416.902.  Dr. Gaspar, as a licensed physician who treated Plaintiff numerous times during and after the period for which Plaintiff seeks disability benefits, is a treating source.

In evaluating the weight to be afforded a treating source's opinion, the ALJ is required to conduct a two-step inquiry. "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Jones v. Colvin*, 514 F. App'x 813, 817 (10th Cir. 2013). Treating source opinions regarding the nature and severity of a claimant's impairments are to be given controlling weight by an ALJ unless those opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or are "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c).

If, however, an ALJ concludes that the opinion is not entitled to controlling weight for one of the reasons listed above, the second step of the analysis requires that the ALJ then decide what weight to afford the opinion. *Jones*, 514 F. App'x at 818. In making this decision, the ALJ should consider the following factors, which are outlined in 20 C.F.R. § 404.1527(c)(1)-(6):

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (#) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the option and the record as a whole; (5) whether or not the physician is a specialist in the are upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).

Each of these two steps must be "analytically distinct" from each other. *Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013). In other words, ALJ's cannot "collapse[] the two-step inquiry into a single point." *Id.*

Here, the ALJ did not afford Dr. Gaspar's opinions controlling weight. AR at 27-30. The Court concludes that the ALJ applied the appropriate legal standards in declining to afford Dr. Gaspar's opinions controlling weight at step one of the inquiry, and supported her decision to do so with substantial evidence. However, because the ALJ failed to explicitly consider and apply the six-factor analysis for assigning weight to non-controlling treating source opinions at step two, as required by the Tenth Circuit, the Court will remand this case to the ALJ.

1. ***The ALJ did not err in affording Plaintiff's treating source's opinions less than controlling weight.***

The ALJ did not commit legal error when he refused to afford Dr. Gaspar's opinions controlling weight because they were inconsistent with other substantial evidence in the record. AR 27–30. A treating source's opinion is inconsistent with other substantial evidence in the record when there is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p, 1996 WL 374188 (July 2, 1996).

Here, Dr. Gaspar concluded that Plaintiff's impairments were such that Plaintiff could sit for less than two hours and stand or walk for less than two hours in an eight-

hour day.  AR at 303, 338-41, 359-62, 366-69; *see also supra* Section II.B.   The ALJ declined to give controlling weight to this opinion, concluding that the following evidence in the record conflicted with Dr. Gaspar's conclusions about Plaintiff's pain levels:  (1) that Plaintiff only received "routine conservative treatment for his condition," (AR at 26, 377);  (2) that Plaintiff did not comply with recommended treatments such as physical therapy, steroidal injections, and additional nerve root blocks, (AR at 26, 342, 346);  (3) that he had not been taking, and was reluctant to take, prescription pain medications, (AR at 342, 345);  (4) that that there was a gap in treatment from August 2011 to October 2012, (AR at 26);  (5) that Dr. Werner reached a contrary conclusion about Plaintiff's limitations, (AR at 350-56); and (6) that Plaintiff's reported daily activities included caring for himself, getting his children ready and off to school, making them snacks when they return and helping them with homework (AR at 211).

Because the ALJ identified evidence in the record that a reasonable mind could accept as adequate to support a conclusion contrary to Dr. Gaspar's opinion, she did not err in declining to afford the opinion controlling weight.  *See* SSR 96-2p.  Plaintiff's testimony about his daily activities, for example, constituted substantial evidence that was inconsistent with Dr. Gaspar's opinion.  *Id.* (stating that testimonial evidence about a claimant's actual activities that conflicts with a treating source's opinion constitutes an "obvious inconsistency" between the opinion and substantial evidence on the record).

For the foregoing reasons, the ALJ properly concluded that Dr. Gaspar's opinions were inconsistent with substantial evidence on the record and therefore not entitled to controlling weight. Accordingly, the Court will not remand the ALJ's decision on that basis.

   2. ***The ALJ committed legal error by failing to conduct the six-factor analysis for assigning weight to non-controlling treating source opinions.***

Once the ALJ has properly declined to afford controlling weight to a treating source opinion, step two of the analysis requires the ALJ to consider the six factors outlined in 420 C.F.R. § 416.927(c)(1)-(6). At the second step, "the ALJ must make clear how much weight the opinion is given . . . and give good reasons, tied to the factors specified in the [applicable] regulations for this particular purpose, for the weight assigned. If this procedure is not followed, a remand is required." *Chrismon*, 531 F. App'x at 900-901.

Here, the ALJ afforded each of Dr. Gaspar's opinions "limited weight." AR at 27 - 30. With respect to each opinion, the ALJ cited Plaintiff's reported activities of daily living as well as opinions from other medical sources as reasons for affording only limited weight. AR at 27-30. As discussed above, this reasoning properly addresses why the ALJ refused to give controlling weight to Dr. Gaspar's opinions. At no point, however, did the ALJ ever move on to the second step of the analysis requiring the ALJ to give good reasons for the weight afforded a treating physician's non-controlling opinion in light of the six factors outlined in 420 C.F.R. § 416.927(c)(1)-(6). Although the

ALJ's statements concerning inconsistencies between Dr. Gaspar's opinions and other evidence on the record could be construed as applying to both (1) a finding at step one that the opinion is non-controlling, and (2) a basis for assigning the opinion limited weight at step two, *(see* 420 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion")), the Tenth Circuit has specifically precluded the ALJ's collapsing of the two steps in such a manner. *See Chrismon*, 531 F. App'x at 900-01. Indeed, in *Chrismon*, the Tenth Circuit remanded the case to the agency for reconsideration for precisely this reason. There, the ALJ afforded a treating source opinion limited weight based on the absence of medical records supporting that opinion. 531 F. App'x at 901. Although this reason could form the basis for finding the opinion non-controlling at step one and assigning the opinion limited weight at step two *(see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion")), the *Chrismon* court deemed the collapsing of these two steps to be an "analytical deficiency" requiring remand. *Id.* at 901.

The Court finds that *Chrismon* is virtually indistinguishable from the present case, and will therefore remand this case. Here, as in *Chrismon*, the ALJ erred by combining the two-step inquiry regarding the weight to be given to treating source opinions into a single step. Upon remand, the ALJ should conduct the following

16

analysis.  First, the ALJ should a) explicitly state that controlling weight is not being given to a treating source opinion; b) explain the reason(s) for denying such weight, i.e. state whether the opinion is being denied controlling weight because it is not "well-supported by medically acceptable clinical or laboratory diagnostic techniques" or is "inconsistent with other substantial evidence in the record," or both; and c) provide substantial evidence supporting its reasoning.  20 C.F.R. § 404.1527(c)(2).[2]

Second, the ALJ should a) explicitly assign the opinion a specific weight; b) "give good reasons, tied to the factors specified in the [applicable] regulations for this particular purpose, for the weight assigned," *Chrisman*, 531 F. App'x at 900 (alterations in original); and c) provide substantial evidence supporting its reasoning.  The ALJ need not address all six factors, *see Jones*, 514 F. App'x at 18, but should make sufficiently clear which factors were used in deciding the weight afforded to the non-controlling treating source opinion.

---

[2] Because the Court has found that the challenged opinion adequately conducted this analysis, upon remand, the ALJ may closely mirror the earlier opinion should he/she come to the same conclusions.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Reverse or Remand is

GRANTED, and this action is remanded to the Commissioner for further proceedings

consistent with this opinion.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**

18